IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MARION

| | |
|---|---|
| **NATALIA HERNANDEZ,**<br><br>                    Plaintiff,<br>     v.<br><br>**OREGON DEPARTMENT OF CORRECTIONS,** a state agency,<br>**TINA KOTEK,** Governor, State of Oregon;<br>**MIKE REESE,** Director, Oregon Department of Corrections (ODOC);<br>**LARRY BENNETT,** Assistant Director, ODOC;<br>**JEREMIAH STROMBERG,** Assistant Director, Community Corrections, ODOC;<br>**TASHA PETERSON,** Administrator of Offender Information & Sentence Computation Unit of ODOC;<br>**CHARLOTTE THRASHER,** Superintendent, Coffee Creek Correctional Facility of ODOC;<br>**JOHN AND JANE DOES 1-9,** are state actors employed by the Governor's Office, ODOC; Board of Parole and Post-Prison Supervision, Oregon Department of Corrections, or other state actors who were personally involved in the violations alleged herein but whose identities are presently unknown to Plaintiff;<br><br>                    Defendants. | Marion County Circuit Court No. 26CV03488<br><br>**COMPLAINT –** Unreasonable Search & Seizure, Art. I, § 9, Or. Const.; Deliberate Indifference, Art. I, § 16, Or. Const.; Abuse of Process; False Arrest; Negligence; Intentional Infliction of Emotional Distress; Breach of Contract, and Federal Civil Rights violations under 42 U.S.C. § 1983: Unlawful Seizure, 4th Amendment; Deliberate Indifference, 8th Amendment; Procedural Due Process, 14th Amendment to the U.S. Constitution<br><br>Amount in Controversy: $2,000,000<br>Filing Fee: $884 (ORS 21.160(1)(d).<br><br>(Claims not subject to mandatory arbitration.)<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1)     Ms. Hernandez went to bed the night of August 11, 2025, thinking that she had close to a year left in prison.  Instead, she was awakened early on the morning of August 12 for a mysterious medical appointment.  She began to get confusing clues that she might or might not

Page: 1 of 29 – COMPLAINT

be released immediately.  That same morning, she was suddenly informed by a CCCF counselor that she would be immediately released that day because her prison term was recalculated "due to a Supreme Court case" and she had been held in prison four months past her release date. Ms. Hernandez was not at all prepared for release. She had no plans, no money, no job, and no place to live.

2)      Three months later, she was suddenly and illegally taken back to prison without notice, an explanation, a hearing, or an opportunity to challenge the decision.

3)      A month after Ms. Hernandez was reincarcerated, the Oregon Supreme Court granted her habeas petition and ordered her immediately released because she was being illegally detained.

4)      Make no mistake, Ms. Hernandez is a victim of an abuse of executive power. Under pressure from the District Attorneys, Governor Kotek's office advised ODOC to engage in an arbitrary exercise of power and order her unlawful arrest and imprisonment. Ms. Hernandez has fought for her liberty and dignity, and while currently released, she remains under constant threat by the executive to be returned to prison.

5)      In 2021, Ms. Hernandez had been convicted of three criminal offenses and sentenced to a term of imprisonment on each, to be served consecutively.  The judge ordered that credit for the time she had already served in jail would be applied to each of the three sentences. ODOC decided that the judge could not do that.  Instead, ODOC applied the credit for time served once.

6)      In 2025 the Oregon Supreme Court, in a different case where a judge had ordered that credit for time served be applied to two sentences in separate cases, explained that a judge did have the discretion to apply credit for time served to one sentence or both sentences.  *State ex*

Page: 2 of 29 – COMPLAINT

*rel Torres-Lopez v. Fahrion,* 373 Or 816, 572 P3d 1045 (2025). With advice from ODOJ, this led ODOC to reexamine the way it had been calculating time served credits.

7) ODOC recalculated Ms. Hernandez's prison term to give her the credit for time served on all three convictions. Now it was clear that ODOC had already kept her in prison too long. So ODOC released Ms. Hernandez on August 12, 2025. Unfortunately, ODOC had no policy or mechanism to assist an inmate who is kept in prison too long.

8) A few months later, due to significant political pressure in response to individuals being released and sentences being recalculated based on the Supreme Court decision in *Torres-Lopez*, ODOC created a new practice for how to calculate sentences following guidance from the Governor's Office. While she was living her life out in the community, stable and three months pregnant, ODOC recalculated Ms. Hernandez's prison term and concluded that she should serve more prison time.

9) In order to bring Plaintiff (and others) back into custody, Defendants adopted a legal theory that Plaintiff was a prison escapee. Pursuant to that theory, Defendants issued and order to arrest Plaintiff as a fugitive who "owes time."

10) They arranged for Defendant Peterson to issue a batch of orders for arrest and return to prison under the statute that allows ODOC to issue these orders to capture a person who has escaped.

11) Even after Ms. Hernandez and others turned themselves in, the Defendants did not offer them any chance to talk to a judge or understand the basis for their detention. They simply locked them up.

12) Lawyers for Ms. Hernandez were forced to seek relief through the extraordinary means of filing a petition for a writ habeas corpus in the Oregon Supreme Court.

13) The Supreme Court accepted the case and explained that Ms. Hernandez had not

Page: 3 of 29 – COMPLAINT

escaped in any sense of the word.  Therefore, ODOC could not arrest her as an escapee.  The Supreme Court ordered that she be released immediately.

14)    After the Court issued the order that she be released immediately, Defendants continued to resist releasing Plaintiff.  The court issued its order on the morning of Christmas Eve.  When she had not been released by early afternoon, her lawyer, Julia Yoshimoto, and others at the Oregon Justice Resource Center (OJRC) began to inquire.  An official for ODOC informed Ms. Yoshimoto that ODOC would likely not release Ms. Hernandez until Monday, December 29, five days later, at the earliest.  Ms. Yoshimoto filed a motion alerting the court of this at about 4:20 pm, and asking the court to instruct ODOC to comply with its order to release Ms. Hernandez immediately.  Only after the Oregon Supreme Court issued a second order, that evening, directing ODOC to comply with its first order, did Defendants finally comply.  Plaintiff was released at 7:37 pm on Christmas Eve.

15)    Defendants had acted with deliberate indifference to the liberty and wellbeing of numerous people including Ms. Hernandez in violation of their constitutional rights under Article I, sections 9 and 16 of the Oregon Constitution, and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.  They had also committed the state law torts of Abuse of Process, False Arrest, and Negligence.  Plaintiff seeks compensation for the harm caused by this arrogance and flip-flopping.

**JURISDICTION & VENUE**

16)    This court has jurisdiction over Plaintiff's claims pursuant to ORS 14.050(2) and as a court of general jurisdiction for tort claims.

17)    Venue is properly before this Court pursuant to ORS 14.060.

Page: 4 of 29 – COMPLAINT

## PARTIES

18)    PLAINTIFF, **NATALIA HERNANDEZ** was born in Salem, Oregon and has spent most of her life in Oregon.  She was incarcerated by the Oregon Department of Corrections and remains on post-prison supervision.

19)    DEFENDANT, **OREGON DEPARTMENT OF CORRECTIONS** (ODOC) is a state administrative agency which has legal and physical custody and control over people sentenced to prison for felony convictions.  ODOC is legally required to "establish a case file and compute the defendant's sentence" under ORS 137.320(3); & ORS 137.370.  ODOC has designated employees of its Offender Information & Sentence Computation Unit (OISC) to be responsible for calculating a prisoner's sentence and release date.  *See e.g.,* OAR 291-100-0008(22), OAR 291-100-0013(1)(g); OAR 291-100-0027(1) & OAR 291-100-0150.  Defendant is also obligated to "prepare a proposed release plan" for each prisoner in its custody and control. ORS 144.096.

20)    DEFENDANT **TINA KOTEK** is the Governor of the State of Oregon.  She directed ODOC to recalculate sentences of prisoners to apply credit for time served more restrictively, and directed that prisoners who had been released but "owed more time" based on this recalculation would be arrested and returned to prison, including Ms. Hernandez.

21)    DEFENDANT **MICHAEL REESE** is, and was at all times relevant, the Director of ODOC.  Mr. Reese is responsible for the training and supervision of all subordinate employees. ORS 423.075(5).  He is responsible for ODOC authority to imprison people according to ORS 423.020(1)(c).  Defendant REESE was personally involved in the decision to arrest and reincarcerate Ms. Hernandez.

Page: 5 of 29 – COMPLAINT

22)    DEFENDANT **LARRY BENNETT** is and was at all times relevant, an Assistant Director of Correctional Services for ODOC. Defendant BENNETT was personally involved in the violations alleged herein.

23)    DEFENDANT **JEREMIAH STROMBERG** is, and was at all times relevant, An Assistant Director of the Community Corrections unit of the ODOC. Defendant STROMBERG was personally involved in the violations alleged herein.

24)    DEFENDANT **TASHA PETERSON** is, and was at all times relevant, the Administrator of the Offender Information and Sentence Computation (OISC) unit of the ODOC. Defendant PETERSON was personally involved in issuing an order for the arrest and detention of Ms. Hernandez.

25)    DEFENDANT **CHARLOTTE THRASHER** is, and was at all times relevant, the Superintendent of the Coffee Creek Correctional Facility. Defendant THRASHER was personally involved in the violations alleged herein.

26)    DEFENDANTS **JOHN AND JANE DOES 1-9** were, at all times relevant, state actors employed by the Governor's Office, ODOC, or they were other state actors who were personally involved in the violations alleged herein but whose identities are presently unknown to Plaintiff.  Once Plaintiff learns the identities of the DOE Defendants through discovery, she will amend this Complaint to substitute the proper names and titles for the DOE pseudonyms. All DOE Defendants were personally involved in the violations alleged herein.

27)    All Defendants acted under color of state law at the time of their acts and omissions alleged herein.  Defendants Kotek, Reese, Bennett, Stromberg, Peterson, Thrasher, and the Doe Defendants are sued in their individual capacities for claims arising under 42 USC 1983.

Page: 6 of 29 – COMPLAINT

# FACTUAL BACKGROUND

**Plaintiff's Criminal Cases and Credit for Time Served**

28)    From 2019 to 2021, Plaintiff was prosecuted in four criminal cases in Marion County Circuit Court.  These were cases Nos. 19CR53050, 19CR78400, 20CR52634, and 20CR62272.

29)    On July 16, 2021, all four cases were resolved pursuant to plea negotiations. Plaintiff pled guilty to Count 1 in case No. 19CR78400  (delivery of methamphetamine) and Counts 3 and 4 in case No. 20CR62272 (two attempts to commit Assault 1).  The remaining counts in those cases, and all the counts in cases 19CR53050 and 20CR52634 were dismissed.

30)    She was in the Marion County Jail from the time she was arrested in 2020 until she was sentenced.

31)    For Count 3 in case no. 20CR62272, Plaintiff was sentenced to the custody of Oregon Dept of Corrections, for a period of 16 month(s)." The judgment further stated: "Credit for time served is pursuant to ORS 137.370 for case number's [sic] 19CR78400, 20CR52634, 19CR53050. Defendant may receive credit for time served."

32)    For Count 4 in case no. 20CR62272, Plaintiff was sentenced to 29 months. The judgment again stated: "Credit for time served is pursuant to ORS 137.370 for case number's [sic] 19CR78400, 20CR52634, 19CR53050. Defendant may receive credit for time served." The judgment also expressed that the sentence for Count 4 is to be consecutive to the sentence for Count 3 in the same case.

33)    For Count 1 in case No. 19CR78400, Plaintiff was sentenced to 40 months.  The judgment again stated: "Credit for time served pursuant to ORS 137.370 for case number's [sic] 20CR62272, 19CR78400, 20CR52634 and 19CR53050. Defendant may receive credit for time served." The judgment also expressed that the sentence shall be consecutive to the sentence in

Page: 7 of 29 – COMPLAINT

case No. 20CR62272.

34) On July 20, 2021, Plaintiff was transferred to Coffee Creek Correctional Facility (CCCF). She remained at CCCF for the next four years.

**Release from ODOC Custody and Return to Custody.**

35) On August 12, 2025, ODOC suddenly released Plaintiff from confinement onto post-prison supervision.

36) It's not easy being released suddenly without any warning or plans.

37) Ms. Hernandez got the first clue that she might be released when she was awakened for an unscheduled medical appointment on the morning of August 12, 2025.

38) A nurse told her that she was there because she was going to be released soon.

39) After the appointment, she went to the office of her counselor and asked what was going on. The counselor was surprised and told her curtly, "Unless I call you down to see me, you are not being released." Confused, Ms. Hernandez returned to her cell.

40) Later that morning, the counselor called her down to the counselor's office. The counselor told her that she would be released immediately.

41) She asked to be able to stay. She had nowhere to live and no source of income. To make matters worse, the counselor told her that she would have to wait several weeks to receive the money she had saved for release in her transitional savings account.

42) She had been waiting a long time to be admitted to an addiction treatment program at CCCF, and she was finally scheduled to begin in in one week.

43) She urgently made calls to try to find someone to pick her up and give her a place to sleep that night. Ms. Hernandez stayed at her grandmother's apartment for the next two weeks.

Page: 8 of 29 – COMPLAINT

**Oregon Justice Resource Center**
**PO Box 5248●Portland, OR 97208●503-944-2270**

Exhibit 1
Page 8 of 29

44)     During those two weeks, she hastily found a place to live and entered into a treatment program.

45)     She started dating the man who would become her husband, Gerald Hefner.  They had known each other since she was 17.  They had decided to wait until she was released from prison to try dating.

46)     She took a job at Subway in early September and continued looking for employment.  In early October she found a job with Orchid Orthopedic Solutions, assisting in the manufacturing of joint replacement parts.

47)     It was a good job, and Ms. Hernandez was good at it.  She was working full time at $21 per hour, with the option to work overtime on Fridays.

48)     She got married and became pregnant.  Life was good.

49)     Her husband was hired by Toyota Motor Manufacturing in Huntsville, Alabama.  They bought a house with her husband's brother and made plans to raise their child there.  Orchid Orthopedic Solutions has a branch nearby in Arab, Alabama.  Ms. Hernandez planned to work there.

50)     Ms. Hernandez applied for a transfer of her post-prison supervision to Alabama.  Her parole officer told her it was likely to be approved because she was doing well on PPS.

51)     Ms. Hernandez had, and at all times has, fully complied with the conditions of her post-prison supervision.

52)     On November 24, 2025, she was visiting her father in Lincoln City when a Clackamas County sheriff's deputy called her.  He said he had a warrant for her arrest.  Before calling, he had gone to her house to arrest her.  He told her to turn herself in immediately.  He told her the warrant said she was considered an "escaped inmate".  He said she could turn herself in at any sheriff's department, but that she would have to be transported from there to the Marion

Page: 9 of 29 – COMPLAINT

County Jail. Plaintiff called her Parole Officer, who was out and could not be located. Plaintiff described the call from the deputy and asked what to do. The "PO-of-the day" called back and told her that she must turn herself in by 4:30 p.m. that day or at 8:00 a.m. the following morning.

53)    At no time prior to the call from the sheriff's deputy did any state official inform Plaintiff that ODOC would recalculate her sentence, that a "warrant" would be issued for her arrest, or that she would be labeled an escaped inmate and a fugitive from justice.

54)    She said goodbye to her father. She and her husband returned to Portland to shut down her new life and do what little they could to get ready for her to turn herself in. She called her employer and explained that she would not be coming back because she had to return to prison. Her boss said that she would be welcome to come back after she was finished with prison.

55)    The next morning, November 25, 2025, her husband and a friend accompanied her to the Marion County Jail. At 8:00 am she turned herself in. She was handcuffed and taken to a cell. Later that day she was transported to CCCF.

56)    While she was back in prison, ODOC changed her projected release date two more times. ODOC kept recalculating the credit she would receive for time served. Each time, her counselor would tell her a different release date. At first, she was told that the time she had been released to post-prison supervision would be counted as time served. Then she was told it would be treated as "inoperative" time, so it would not be counted, and her release date would be delayed that much later than the release date ODOC had projected before it began recalculating her sentence over and over in 2025. It was very confusing. She wondered if she would ever be able to rely on any release date that they told her.

57)    For the first three weeks back at CCCF, she could not return to her old unit. She was housed in an intake unit. There was very little to do. She could not get a job. She could

Page: 10 of 29 – COMPLAINT

buy items from the commissary. She read and read. After three weeks she was allowed to move back to the minimum-security unit where she had lived prior to release. She still was not able to return to her old job.

58) Ms. Hernandez remained confined at CCCF until the Oregon Supreme Court ordered her release on December 24.

**The Political Landscape in which the Return to Prison Occurred.**

59) ODOC's arrest and re-imprisonment of Plaintiff was not unique to her. Following the Oregon Supreme Court's opinion in *State ex rel Torres-Lopez v. Fahrion,* 373 Or 816, 572 P3d 1045 (7-10-25)*(Torres-Lopez I), adh'd to as modified on recons,* 374 Or 423, 579 P3d 1056 (11-14-2025)*(Torres-Lopez II)* (2025), ODOC made a sweeping correction to the way it calculated the length of prison terms for adults in their custody. *See* Oregon Department of Corrections, *Sentence Recalculation*, https://engage.doc.oregon.gov/sentence-recalculation (accessed Dec 10, 2015) (explaining the reasoning and methodology for the change in sentence calculations in response to *Torres-Lopez I*). This correction resulted in new sentence calculations for several hundred people serving prison sentences, and the immediate release of approximately 20 people. *See* Noelle Crombie*, Hundreds of Oregon prisoners see sentences shaved by days, even years under new court ruling*, The Oregonian (Oct 16, 2025).

https://www.oregonlive.com/politics/2025/10/hundreds-of-oregon-prisoners-see-sentences-shaved-by-days-even-years-under-new-court-ruling.html (accessed Dec 10, 2025).

60) However, ODOC and the governor were publicly criticized by district attorneys and crime victim groups. *Id*. The governor pressured ODOC to fix the situation quickly.

61) District attorneys filed motions to have sentencing judgments amended in response to ODOC's policy change. The Jackson County District Attorney even went so far as

Page: 11 of 29 – COMPLAINT

to file a contempt action against ODOC, its director, and an ODOC official.  *See State of Oregon v. Oregon Department of Corrections,* Jackson County Circuit Court Case 25CN04871.

62)    On November 24, 2025, a crime victims group brought a mandamus action against ODOC, its director, and the state in *Linda Kauffman, Karen Garrison & Mackynze Highland v. Oregon Department of Corrections; Michael Reese; and the State of Oregon,* Marion County Circuit Court No. 25CV62661.  The case sought an order directing the defendants in that case to stop releasing people and "recommit" any inmate based on the recalculation in August 2025.

63)     On the same day, November 24, 2025, ODOC issued the "Order for Arrest and Return of Prisoner" for Plaintiff's arrest that purported to be pursuant to ORS 144.350.

64)    ODOC even went so far as to describe the order for arrest as a warrant.  While ORS 144.350 gives ODOC the power to issue an order the arrest and detention of a person who has escaped, the legislature has not, in any circumstance, given ODOC the authority to issue an arrest warrant.  Use of the word warrant falsely implied to law enforcement officers and Ms. Hernandez that some form of judicial oversight had occurred.

**The Supreme Court Orders Release.**

65)    Plaintiff sought outside assistance to understand the reason for her confinement.  She was not offered a public defender.  Finding legal assistance was difficult from inside of prison.  Eventually, a nonprofit called the Family Preservation Project recommended that she contact the Oregon Justice Resource Center (OJRC).

66)    Julia Yoshimoto, the Director of the Women's Justice Project at the OJRC began to make inquiries on her behalf.  On December 2, 2025, Ms. Yoshimoto emailed the prison term analyst at ODOC and inquired about Plaintiff's arrest and re-imprisonment.

Page: 12 of 29 – COMPLAINT

67)    On December 3, 2025, Tosha Hickey, ODOC Interim OISC Policy Manager, responded, stating "*Due to updated legal advice and guidance from the Governor's Office*, DOC will now apply a single credit across the total sum of combined sentences, rather than applying the same credit to each individual sentence. As Hernandez was previously receiving duplicate time served credit on consecutive sentences, her sentences were recalculated and based on the *new policy direction*, she must still serve time at DOC." (emphasis added).

68)    After these new sentence calculations, Defendant Peterson, on behalf of ODOC, had issued orders for arrest and detention, using the word "warrant," purportedly under the authority of ORS 144.350 to approximately 20 former prisoners. They were arrested or turned themselves in and were reincarcerated by ODOC Defendants.

69)    On November 27, 2025, OJRC filed an original jurisdiction Habeas Corpus petition in the Oregon Supreme Court in *Thomas Allen v. Charlotte Thrasher,* Oregon Supreme Court No. S072466.

70)    On December 2, 2025, an attorney for another of those prisoners, Jose Rafael Arellano-Sanchez, filed an original jurisdiction Habeas Corpus petition in the Oregon Supreme Court in *Jose Rafael Arellano-Sanchez v. Charlotte Thrasher,* Oregon Supreme Court No. S072470.

71)    On December 3, 2025, the Oregon Supreme Court issued a Show Cause Order in *Allen v. Thrasher,* SC S072466.

72)    On December 4, 2025, the Oregon Supreme Court issued a Show Cause Order in *Arellano-Sanchez v. Thrasher,* SC S072470.

73)    On December 11, 2025, OJRC filed an Original Jurisdiction Petition for a Writ of Habeas Corpus in the Oregon Supreme Court in *Natalia Hernandez v. Charolotte Thrasher,* S072503.

Page: 13 of 29 – COMPLAINT

74)     On December 18, 2025, the Oregon Supreme Court held oral argument in *Allen v. Thrasher,* SC S072466 and *Arellano-Sanchez v. Thrasher,* SC S072470.

75)     On December 22, 2025, the Oregon Supreme Court issued an Order Allowing the Petition for Writ of Habeas Corpus, in *Natalia Hernandez v. Charlotte Thrasher,* SC S072503, declaring in part: "The matter will be resolved without oral argument. As of the date of this order, the case is submitted on the record."

76)     On December 24, 2025, the Oregon Supreme Court issued unanimous decisions in *Arellano-Sanchez v. Thrasher,* 374 Or 623 (2025); *Allen v. Thrasher,* 374 Or 618 (2025); and *Hernandez v. Thrasher,* 374 Or 643 (2025), holding that ORS 144.350 did not authorize ODOC to issue the order for each plaintiff's arrest and return.  The Supreme Court ordered each plaintiff to be immediately discharged from custody.

77)     In *Hernandez v. Thrasher*, the Oregon Supreme Court "conclude[d] that ORS 144.350 did not authorize DOC to issue the order for plaintiff's arrest and return and that, as a result, plaintiff's present imprisonment is unlawful." *Id.,*  at 647. "We order defendant to discharge plaintiff from custody immediately." *id.,* "It is hereby ordered that plaintiff immediately be discharged from her illegal imprisonment." *Id.*

78)     ODOC officials resisted immediately releasing Thomas Allen, Jose Arellano-Sanchez and Natalia Hernandez on December 24, 2025, claiming that no action would be taken on their release until Monday, December 29, 2025.

**The Drive to Re-Incarcerate Plaintiff, Again.**

79)     Meanwhile, at 1:29 p.m., on December 24, 2025, the Marion County District Attorney's office filed an Amended Motion for Corrected Judgment (ORS 137.172) and Bench Warrant to Issue in *State v. Hernandez,* Marion County Circuit Court No. 19CR78400.

Page: 14 of 29 – COMPLAINT

80)    On December 26, 2025, Ms. Hernandez filed an objection.

81)    On December 29, 2025, the Marion County Circuit Court issued an order appointing counsel to represent her for the motion.

82)    On December 31, 2025, the Marion County Circuit Court scheduled a hearing on the motion for January 23, 2026.  If the judge grants the motion, Ms. Hernandez may have to return to prison again.

83)    On December 31, 2025, attorneys at the OJRC sent a letter to Defendants REESE and KOTEK stating in part: "In November 2025, . . . ODOC issued arrest orders or 'warrants' for approximately 20 people pursuant to a theory that those people had 'constructively escaped' – unlawfully departed from ODOC custody – and were fugitives who 'owed time.'" "On December 24, 2025, the Oregon Supreme Court, acting expeditiously, issued three legal opinions and ordered the immediate release of all three plaintiffs. In the opinions, the Court concluded that ODOC had **no legal authority** to arrest and imprison those who ODOC lawfully discharged from its custody." "We expected ODOC to release the others, who were similarly situated, because the Court's reasoning and ruling were not specific to only the three plaintiffs. Rather, the ruling invalidated the legal theory upon which all of the other, approximately 20 people were arrested and imprisoned. However, at the time of this writing, it appears ODOC has not released those similarly situated to the plaintiffs. This ongoing illegal incarceration of these individuals now appears intentional and in willful defiance of the law and the Oregon Supreme Court." "With respect to these approximately 20 people, the law is clear. The State of Oregon and ODOC are unlawfully detaining these individuals. We urge you to release these individuals."

84)    On December 31, 2025, Defendant REESE responded to OJRC's request, disagreeing with the assertion that those decisions required the immediate release of all other individuals whom OJRC described as similarly situated, and stating that it would not release any

Page: 15 of 29 – COMPLAINT

other prisoners on the basis of the Supreme Court's statement of the law with respect to Allen, Arellano-Sanchez, and Hernandez.  He stated that ODOC was continuing to review the implications of recent court decisions and to coordinate with the Governor's Office and the Department of Justice to ensure that ODOC's actions were legally sound.

85)    Defendant REESE cc'd his foregoing response to Defendants BENNETT and STROMBERG and several staff of Defendant KOTEK.

86)    On January 13, 2026, Defendants REESE and BENNETT appeared before the interim House Judiciary Committee to provide an informational briefing regarding ODOC's response to the Oregon Supreme Court's *Torres-Lopez* decision.

87)    On January 13, 2026, Defendant BENNETT admitted to lawmakers that 388 prisoners had their projected release dates moved up in response to the *Torres-Lopez* decision and 40 Adults in Custody (AICs) were immediately released upon recalculation of their sentence because ODOC had over-incarcerated them at that point.

88)    Mr. BENNETT admitted to lawmakers that prosecutors complained about ODOC's recalculation of sentences and in November 2025, ODOC "made a policy decision to recalculate the sentences" that had previously been reduced pursuant to *Torres-Lopez,* to "essentially remove[] that duplicate time."

89)    Mr. BENNETT admitted that ODOC then relied upon its perceived authority under ORS 144.350 to "bring those [released] individuals back into custody to serve the remainder of their time."

90)    He admitted that "we ended up returning 22 people to custody to serve out the remainder of their sentence. Again, some of those had just days left to serve, weeks, months, and a handful had a few years."

Page: 16 of 29 – COMPLAINT

91) Mr. BENNETT acknowledged that the Supreme Court issued the habeas decision in Arellano-Sanchez, Allen and Hernandez's cases on Christmas Eve, ruling "that DOC lacked the statutory authority to return those individuals, and we were ordered to release them immediately, which we did late on the evening of Christmas Eve"

92) Mr. BENNETT admitted, "So where do we stand today? Well, we've got 17 individuals currently in custody who were returned on warrants and have not completed their court-ordered sentences, and habeas petitions continue to come in regularly. So, it's likely that we will be ordered to release these 17 individuals in the near future."

93) He admitted: "We have another 15 individuals who are not in DOC custody and owe additional court-ordered time, and the mechanism for returning those individuals to custody is unclear at this point."

94) Defendant REESE reiterated that Defendants know that they returned 17 people to custody without the legal authority to do so but that they refuse to release those people from custody unless and until habeas corpus proceedings are filed and the Court issues orders in their specific cases mandating their immediate release.

95) The Vice-Chair of the House Judiciary Committee asked:

> But we have other people that, in terms of the facts that are relevant to this or in the exact same factual situation, and they just haven't had their case heard yet, but that we are reasonably anticipating that they are going to get habeas petitions granted by the Oregon Supreme Court. In other words, that there will be a ruling coming down the pipeline based on the previous rulings that we don't have the authority to be holding them right now, but we're continuing to hold them until those rulings happen. Is that a fair characterization situation we're in? Or how would you characterize it?

96) Mr. REESE responded: "the 17 people that remain in our custody are case-specific[,]" "So all of these individuals are unique and absent a court order that directs us. They have a sentence that we intend to carry out. So, absent a habeas petition and a decision by the

Page: 17 of 29 – COMPLAINT

Oregon Supreme Court or another court that guides us, we're going to continue maintaining custody of those individuals."

97) During the January 13, 2026 hearing, Defendant BENNETT noted: "DA's are filing motions to amend judgments, and we imagine some of those will be successful, some will not."

98) Defendant BENNETT knew or reasonably should have known at the time of his testimony that many of those motions had already been denied.

99) In fact, on or about January 12, 2026, the trial court had denied such motions in *State of Oregon v. Jovani Sanche-Portillo,* Jackson County Circuit Court No. 21CR12280, *State of Oregon v. Craig Anthony Robinson Jr.,* Jackson County Circuit Court No. 22CR50084, *State of Oregon v. Joaquin Amadeus Cowart,* Jackson County Circuit Court No. 20CR08127, *State of Oregon v. Michael Andrew McEwen,* Jackson County Circuit Court No. 23CR06785 & 23CR07775, and *State of Oregon v. Dominic Agapito Earl Fletes,* Jackson County Circuit Court Nos. 22CR9099 & 22CR09574, concluding that the Court did "not have authority to remand a defendant back into DOC custody" and "does not have the power to[remedy any supposed ambiguities in these judgments]," holding: "The issue hinges upon the Court's authority to modify an 'erroneous term' in the judgment pursuant to ORS 137.172 or the Court's non-statutory inherent authority over their sentencing judgments. The Court finds that pursuant to relevant caselaw, an 'erroneous term' is not a fluid concept. It does not change based upon the interpretation of sentencing judgments by the Department of Corrections."

100) Prior to the House Judiciary Committee on January 13, 2026, a DA motion was also denied in *State of Oregon v. John Chares Weber Jr.,* Jackson County Circuit Court Nos. 22CR04334 & 22CR27641 concluding that the Court did "not have authority to remand a defendant back into DOC custody" and "does not have the power to[remedy any supposed

Page: 18 of 29 – COMPLAINT

ambiguities in these judgments]," holding: "The issue hinges upon the Court's authority to modify an 'erroneous term' in the judgment pursuant to ORS 137.172 or the Court's non-statutory inherent authority over their sentencing judgments. The Court finds that pursuant to relevant caselaw, an 'erroneous term' is not a fluid concept. It does not change based upon the interpretation of sentencing judgments by the Department of Corrections."

101)   On January 13, 2026, a DA motion was also denied in *State of Oregon v. Rene Eugene Ybarra,* Marion County Circuit Court No. 19CR36904.

102)   On January 13, 2026, Oregon Justice Resource Center (OJRC) Executive Director Bobbin Singh sent an email to Defendant REESE stating:

> As you are likely aware, yesterday the Jackson County Circuit Court issued denials in the State's motions to correct/amend judgments in a number of cases with regard to those who ODOC lawfully released based on *Torres-Lopez* and then reincarcerated under ORS 144.350. In an opinion explaining why the Court was denying the motions, Judge Cromwell also noted:
>
> 'On December 24, 2024, the Oregon Supreme Court issued their ruling in *Arellano-Sanchez v. Thrasher,* 374 Or 623 (2025), concluding DOC did not have the statutory authority to take three similarly situated defendants back into custody. The Supreme Court ordered those defendants to be immediately released from DOC custody. It is anticipated that the same shall occur with the defendants listed above.'
>
> We are once again writing to request the immediate release from its physical and legal custody all those individuals who were unlawfully arrested and imprisoned like the three plaintiffs whom the Oregon Supreme Court ordered to be immediately released on December 24, 2025. There has not been and there is currently no lawful authority for ODOC to be detaining these individuals.

103)   On January 14, 2026, Defendant REESE responded to Mr. Singh's January 13, 2026 email, stating: "As I stated in my previous letter to you, absent a court order we will maintain custody of these individuals."

Page: 19 of 29 – COMPLAINT

**Attorney Fees.**

104)    Litigation of the habeas action in *Hernandez v. Thrasher* and the effort to seek compensation for the harm of being returned to custody requires a large amount of work by attorneys.  Plaintiff is entitled to an award of reasonable attorney fees pursuant to 42 U.S.C. § 1988 and ORS 182.090 so that the OJRC can be reimbursed for the work by its attorneys on her behalf.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF:

**Unreasonable Searches & Seizures: Article I, Section 9, Oregon Constitution.**

105)    Plaintiff realleges all facts set forth in the paragraphs above as if more fully set forth herein.

106)    The acts and omissions of ALL DEFENDANTS, in issuing a warrant for Plaintiff's arrest, and causing her to be arrested and incarcerated without legal authority violated the protections against unreasonable arrest and imprisonment guaranteed by Article I, section 9, of the Oregon Constitution.

### SECOND CLAIM FOR RELIEF:

**Imprisonment with deliberate indifference to the illegality of the imprisonment**

**in violation of Article I, Section 16, Oregon Constitution.**

107)    Plaintiff realleges all facts set forth in the paragraphs above as if more fully set forth herein.

108)    The acts and omissions of ALL DEFENDANTS, in incarcerating Plaintiff without legal authority and without adequately investigating the law and facts to determine whether such

Page: 20 of 29 – COMPLAINT

confinement would be legal, and persisting even after being alerted that it was not legal, constituted the infliction of illegal punishment deliberate indifference that violated the protections of Article I, section 16 of the Oregon Constitution.

## THIRD CLAIM FOR RELIEF:

### Abuse of Process

109)    Plaintiff realleges all facts set forth in the paragraphs above as if more fully set forth herein.

110)    Defendants PETERSON and DOES used the process for ODOC to issue an Order for Arrest and Return of Prisoner, misusing the word "warrant," for the ulterior purposes of circumventing due process protections, and swiftly returning Plaintiff to prison, without any legal authority to do so. This action was a wrongful perversion  of these legal procedures. The Defendants committed this perversion of these legal procedures intentionally and in disregard of Plaintiff's rights. As a result, Plaintiff was incarcerated suddenly, denied due process, and illegally confined for 29 days.

111)    The Oregon Supreme Court explained that ORS 144.350 did not authorize ODOC to issue the order for plaintiff's arrest and return to prison.  Ms. Hernandez did not escape from prison.  Therefore, to issue an order for arrest and detention on the basis of this statute was an abuse of process. *Hernandez v. Thrasher*, 374 Or 643, 647 (2025).

112)    Defendants are collaterally estopped and prevented by issue preclusion from arguing that they had legal authority under ORS 144.350 to issue an order for the arrest and return of Ms. Hernandez.

Page: 21 of 29 – COMPLAINT

## FOURTH CLAIM FOR RELIEF:

### False Arrest and Imprisonment

113)    Plaintiff realleges all facts set forth in the paragraphs above as if more fully set forth herein.

### Unlawful Imprisonment from April to June 2025

114)    ODOC, by failing to fully credit Ms. Hernandez for time served in jail as stated in the judgment, unlawfully imprisoned Ms. Hernandez approximately four and a half months past her lawful release date until it suddenly released her on August 12, 2025.

### Unlawful Arrest and Imprisonment in November and December 2025

115)    ALL DEFENDANTS, in issuing an order for Plaintiff's arrest and causing her to be arrested on September 25, 2025 and causing her to be incarcerated until December 24, 2025, unlawfully arrested her and unlawfully confined her for 29 days.

The Oregon Supreme Court explained that the arrest and imprisonment of Ms. Hernandez was unlawful. *Hernandez v. Thrasher*, 374 Or 643, 647 (2025).

Defendants are collaterally estopped and prevented by issue preclusion from arguing that the November 25, 2025 arrest and imprisonment was lawful.

## FIFTH CLAIM FOR RELIEF:

### Negligence:

116)    Plaintiff realleges all facts set forth in the paragraphs above as if more fully set forth herein.

### Negligent Deprivation of Due Process

117)    In depriving people of any pre-arrest notice, or any pre or post-arrest opportunity to be heard, Defendants created a foreseeable risk that people would be deprived of procedural

Page: 22 of 29 – COMPLAINT

**Oregon Justice Resource Center**
**PO Box 5248●Portland, OR 97208●503-944-2270**

Exhibit 1
Page 22 of 29

due process.

118)    Protection from deprivation of liberty without procedural due process is highly protected by Oregon constitutional, statutory, and common law.  These laws apply to all people in the State of Oregon who are facing an imminent or ongoing deprivation of liberty.  Plaintiff was protected by these laws.

119)    Defendants acted unreasonably considering the risk of harm.

**Negligent Issuance of an Order for Arrest and Detention**

120)    Defendant Tasha Peterson, by failing to take care that information in the order for arrest and return to prison was accurate, and failing to take care that she had lawful authority to issue the order for arrest and detention, and using the term "warrant," created a foreseeable risk that people would be unlawfully arrested.

121)    The statutes investing her with the power to issue an order for arrest and detention, and the statutory and constitutional prohibitions on issuing a warrant without probable cause, protected Plaintiff from being subject to a warrant issued without lawful authority.

122)    Defendant Peterson acted unreasonably given the authority and responsibility entrusted to her and the amount of harm she risked by failing to take care that the order for arrest and detention she issued was accurate, valid, and that she had lawful authority to issue it.

123)    All Defendants created a foreseeable risk of harm and exercised their authority unreasonably given the risk of harm by directing or causing Ms. Peterson to issue an arrest warrant without legal authority.

124)    Ms. Hernandez suffered the harm described below under Damages.

**Negligent Failure to Provide Planning or Support for Sudden Release.**

125)    ODOC has a legal duty to provide release planning to prisoners prior to release. *See* ORS 144.096 and OAR 291-207-0030.  The purpose of this duty is to prevent prisoners from

Page: 23 of 29 – COMPLAINT

being released without a home, job, money, identification, transportation, food, prescription medication, a telephone, connection with friends, family, mentors, connection with a community corrections counselor for post-prison supervision, and much more. It is also to reduce stress, desperation, and recidivism. When ODOC cannot provide release planning, it has a duty to have a sudden release policy that provides clarity and support during release and includes post-release assistance to people who are released without the opportunity to engage in release planning.

126)    ODOC has a legal duty to collect 10% of an inmate's prison wages or other income and deposit that money in a transitional savings account belonging to the inmate.  See ORS 423.105(3)(b) and OAR 291-158-0010(14)(c).  ODOC was unable to disburse the money Ms. Hernandez had saved for release in her transitional savings account for over two weeks after she was released.

127)    From time to time, ODOC releases prisoners suddenly. There is a foreseeable risk that prisoners will be released suddenly without the benefit of release planning.

128)    Plaintiff needed clarity and support during release process, and she needed post-release assistance due to her sudden release without a release plan.

129)    Defendant's failure to have a sudden release policy caused a foreseeable risk that prisoners would be harmed by being released suddenly without release planning or post-release assistance.

130)    The failure to have a sudden release policy in light of the frequency of sudden releases and the harm to people who are suddenly released without post-release assistance is unreasonable.

131)    The first days after ODOC suddenly released Ms. Hernandez were filled with uncertainty and challenges that could have been avoided by a sudden release policy.

Page: 24 of 29 – COMPLAINT

132) Ms. Hernandez was released suddenly without a plan or support on August 12, 2025 and again on December 24, 2025.

133) She was harmed by the lack of a sudden release policy and the lack of post-release support.

134) Plaintiff suffered economic and non-economic injuries due to Defendant's lack of a sudden release policy and lack of post-release assistance.

**SIXTH CLAIM FOR RELIEF:**

**Breach of Contract**

135) On August 12, 2025, ODOC released Ms. Hernandez to post-prison supervision (PPS) on the condition that she comply with all the requirements of supervision imposed by the Board of Parle and Post-Prison Supervision and her parole officer.

136) She was told that if she violated any of the requirements of PPS she could be returned to prison.  If she complied with all of the requirement of PPS she would remain free.

137) Ms. Hernandez signed an agreement to comply with all of the requirements of supervision.

138) She complied with all the requirements of supervision.

139) She relied on ODOC's promise that she would remain free.  She rented a home, entered outpatient treatment, got a job, got married, and got pregnant.

140) ODOC broke its agreement.

141) When ODOC issued a warrant for her arrest and took her back into custody it caused her harm in the ways harm described below under Damages.

Page: 25 of 29 – COMPLAINT

**SEVENTH CLAIM FOR RELIEF:**

**Unlawful seizure in violation of the 4th Amendment to the U.S. Constitution.**

142)    Plaintiff realleges all facts set forth in the paragraphs above as if more fully set forth herein.

143)    The acts and omissions of ALL DEFENDANTS, jointly and severally, in colluding to illegally issue an order for arrest and return to prison, using the word "warrant," and causing the arrest and incarceration of the Plaintiff without legal authority violated the protections against unreasonable arrest and imprisonment guaranteed by the Fourth Amendment to the United States Constitution.

**EIGHTH CLAIM FOR RELIEF:**

**Imprisonment with deliberate indifference to the illegality of the imprisonment**

**in violation of the 8th Amendment to the U.S. Constitution.**

144)    Plaintiff realleges all facts set forth in the paragraphs above as if more fully set forth herein.

145)    The acts and omissions of ALL DEFENDANTS in incarcerating Plaintiff without legal authority and without adequately investigating the law and facts to determine whether such confinement would be legal, and persisting even after being alerted that it was not legal, constituted the infliction of illegal punishment with deliberate indifference that violated the protections against cruel and unusual punishment of the Eighth Amendment to the United States Constitution.

Page: 26 of 29 – COMPLAINT

**NINTH CLAIM FOR RELIEF:**

**Lack of Procedural Due Process in violation of the 14th Amendment to the**

**U.S. Constitution.**

146)     Plaintiff realleges all facts set forth in the paragraphs above as if more fully set forth herein.

147)     Defendants did not provide any notice or process to Plaintiff prior to her arrest and reimprisonment, thus depriving her of her liberty without due process of law. Nor did they provide any form of hearing or other due process after she was imprisoned. Plaintiff's only recourse was to petition for a writ of habeas corpus.

148)     The acts and omissions of ALL DEFENDANTS, jointly and severally, in issuing an illegal order for arrest and detention, and calling it a warrant, and causing the illegal arrest and incarceration of Plaintiff without legal authority to do so, and without providing her with notice or a meaningful opportunity to be heard before or after she was imprisoned, deprived Plaintiff of all procedural protections designed as a safeguard against the kind of illegal confinement Defendants subjected her to, in violation of the Fourteenth Amendment to the United States Constitution.

**DAMAGES**

**All Claims**

149)     ODOC failed to apply credit for the time Ms. Hernandez had served in jail prior to being transferred to ODOC custody as stated in the judgment until it corrected its error far too late on August 12, 2025. Ms. Hernandez was unlawfully imprisoned for approximately four months, from the date when she should have been released, until August 12th. She was also deprived the advance notice that would have allowed her to enter programs that begin to be

Page: 27 of 29 – COMPLAINT

available 270 days before a prisoner is released, as well as additional release planning and support that becomes available six months before release.

150)    Ms. Hernandez created a new life for herself after ODOC kicked her out with no plans and no support.  Then ODOC took it all away.

151)    When the handcuffs went on at the Marion County Jail on November 25, 2025, her worst thought was that she was going to give birth in prison.

152)    She thought she would not be able to share her pregnancy with her husband.  Her baby would be taken from her right after it was born.  Would Gerald be able to take care of the baby?

153)    She lost the best job she ever had.

154)    From November 25 to December 24 she spent 29 days in prison, most of it back at square one, intake, with no job, no classes, no programs, no friends, no radio, no TV, no commissary.  She was in the "blackout period" new prisoners must go through.  Even after she was transferred back to her old unit in minimum security, many of the rules for newcomers still applied – she was at a lower incentive level than when she left, she was ineligible for most of the jobs available to people in minimum.

155)    Ms. Hernandez intends to amend this complaint to add a demand for punitive damages against one or more Defendants to deter the intentional and flagrant disregard of liberty and wellbeing that they inflicted on her and many others.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff prays for a judgment against defendants as follows:

A.    Grant Plaintiff compensatory damages against all Defendants, jointly and separately, totaling $2,000,000 or an amount to be determined at trial.

Page: 28 of 29 – COMPLAINT

B.    Award Plaintiff reasonable costs, expenses, and attorney's fees pursuant to 42 U.S.C. § 1988 and ORS 182.090.

C.    Grant such further relief as this court deems just and equitable under the circumstances.

**DATED** this 21st day of January, 2026.

Respectfully submitted,

BENJAMIN HAILE, OSB#040660
Attorney at Law
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone:    503-944-2270
Email:          bhaile@ojrc.info

Attorney for the Plaintiff, Natalia Hernandez

Page: 29 of 29 – COMPLAINT